Good morning, Counsel. Good morning, Your Honors. May it please the Court, Theodore Boutrous for the Appellant, Nevada Restaurant Service is doing business as Dottie's and I'd like to reserve three minutes for rebuttal. This case in some ways presents every business's worst nightmare. We had local government regulators at the behest of big casino interests over a period of almost seven or eight years passing regulations targeting Dottie's business and seeking to drive it out of business in Clark County. And the question, the key question here, and those regulations were retroactive, they were haphazardly applied, the key question for the Court today is whether those governmental actions deprive Dottie's of a property or liberty interest protected by the Due Process Clause. Let me just ask a question at the very beginning. How have you been trying to revoke your gaming license? Well, Your Honor, the letters that came out in the fall of 2015 said that unless, that flip-flopped on the interpretation of the grandfathering clause in the 2014 ordinance, said that unless Dottie's retrofitted and went into compliance with these arduous regulations that went to the physical nature of the property within seven months, then they would be, they would lose their license status as a gaming establishment that could have 15 slot machines. So they were saying we're going to, we're going to take away your license to do what you can do. But they never did. The company ultimately did retrofit and so remains licensed and the county is sort of, I think, waiting to see what happens in this case. So it's in the future. Well, you have not lost a property interest yet, have you? Well, we've lost $4 million in terms of retrofitting and taking the action to comply with this retroactive regulation. That's not a loss of a property interest, the fact that you've had to spend money. How is that a loss of a property interest? It's a loss of property, but not a property interest. Well, it's a burden that has been imposed because of the governmental action, which we submit was irrational, arbitrary, and retroactive. And let me address the property interest from the licensing. So with the licenses, the company had the right to have 15 slot machines and under the regulation, under the grandfathering clause. This Court in the Wedges-Ledges decision, which really from this Court lays out all the principles and I think really requires that the Court reverse, talked about the test. So the question is whether there was a property interest in the deriving from existing rules or understandings that stem from an independent source like state law. And part of that analysis is whether there were mandatory terms and whether there was an articulable standard. And if the Court, if we go to the tavern, the grandfather tavern regulations in page A11 in our addendum to our brief, the terms are mandatory in the grandfather provision. It says that a tavern that has been met the criteria, right above that, shall be considered to be a primary business for all purposes of the gaming code to which the operation of 15 or fewer slot machines shall be presumed to be incidental. And then the next sentence on page A12 says a grandfather tavern shall not be required to comply with the new provisions. So it says that if the criteria are met, which they were, then there's a mandate to the commission to grandfather. » Grandfather tavern shall not be required, not the grandfather owner. » Exactly. And that was the new interpretation that came after the closed door. It really is sort of right out of the movies. The closed door meeting with the board commissioner who had been against Dottie's all along, the county attorney says no, change your interpretation, focus on when the owner was approved, i.e., Dottie's. » Counselor, is your argument that the language of the statute created a property interest in the grandfathered status of the tavern? » Yes. » Regardless of owner. » Yes, exactly. And then when the grandfathering provision was enacted and it says shall, it created that sort of property interest in the grandfathered status of the property.   » And then the board says that if we go to the question of when a license can be revoked, because this is, there's, I don't think the county really has argued otherwise, this would revoke the licenses unless they complied, both the gaming provision, section 80402OC, and the tavern provision, which is section, excuse me, 802 is the tavern provision, let me rephrase that, section 804 may revoke a tavern license for violations of this chapter, that's at page A9 of our addendum, and not based on a whim or caprice or casino lobbyist's word, and then the gambling provision, section 804, allows for revocation of a license for cause after a hearing. » But doesn't the ordinance also allow for imposing conditions on the license? And why isn't that where we are? Instead of the revocation realm, why aren't we in the conditioning realm? » We respectfully submit that that provision, if one looks at the provisions on that, are speaking to when a new license is granted. So if someone comes before you and says you want a license, we'll grant it to you, but you have to do the following things. » So your argument is that no conditions can ever be imposed on a license once granted? » Not retrospective conditions without due process that aren't rational and reasonable and non-arbitrary. Here, that's the core issue. But, Your Honor, so if it comported with due process, then potentially there could be conditions. » So what case are you relying upon to support your argument that no conditions could be imposed upon an existing license? » Well, I think the wedge's ledger's decision is it really goes through all the principles that it relies on, the circuit rules, the Supreme Court decisions. » What about Thornton and Bury? » I was just about to quote Thornton on the licenses, because that case says explicitly that at page 1164, that a state operating license that can be revoked only upon a showing of cause creates a property interest. » But we're not talking about revocation. We're talking about a condition as opposed to a revocation. Of course there has to be a due process and a showing of cause. But what about imposing a condition? What case do you have that supports the notion that for a government agency to impose conditions on a license, that there has to be a due process? » I think, Your Honor, just first the general notion that if there's a property interest and the government in burdening the property, we're talking about real property here. » Are we back to your argument that there is a property interest? Does your argument on conditions only work if we agree with you that there's a property interest? » Yes, Your Honor. I have to demonstrate to you that there's a property or liberty interest. And so there's a property interest because this regulation, whether it's talked about as a condition or a revocation, was having an impact. It was taking value from the physical property of these taverns. And if you look at it, it's almost incomprehensible what they were requiring DOTIs to do. The angle of the bar top slot machine, the number, the limits on seating that could be compliant with the Americans with Disabilities Act, it was clearly meant to just keep torturing them so they would go out of business. But the other point that I wanted to make was that these are federal questions. So I know my friend on the other side is going to say that some of the provisions talk about the broad authority. The code does say that it's not creating a liberty or property interest. But it's a federal question, whether specific provisions of the law. » But one of the things we look at in terms of determining whether or not there's a property interest is whether or not there's legislation that embeds that alleged interest with those properties. » Exactly right. And I think both the four cause provisions under Thornton and the provisions that I mentioned that make it mandatory, that say shall grandfather these casinos in or taverns in, are the kind of embedding of an expectation. And then I have two more points that I think seal the deal on the property right. First, the director Holloway, the agent of the county, wrote the letters in January of 2015 saying these 19 taverns are grandfathered because their applications were approved before the particular date that was identified. And so for eight months, she, for the county, was reassuring the Dotties that they were grandfathered in. » Of course there's an issue of whether or not she could bind the county commission. Because of course the county commission is the body that has the authority to give or take away. And so there's a question as to whether or not one government employee can speak for the entire commission. » But she was the director of business licensing, an authorized agency acting within her authority. » Didn't have a vote on the county commission. » She didn't. But she was then the person who was rolled out to say in the fall, we've revised our interpretation, or I can't remember the exact formulation, after the closed door meeting, saying that we're taking a different provision. And now we're going to look at the owner. » But that's the county commission's authority. The county commissioner can say, this employee didn't, that interpretation was not the interpretation of the county commissioners. We are the ones who pass the law. We are the ones who determine what we meant when we said that. And what she said wasn't what we intended when we passed the ordinance. Why isn't that a valid way to look at this? » Well, I think we're at summary judgment. We get the inferences. There's no, all the inferences point to that she was fully authorized by the county commissioners to send those letters out. When there was a commission hearing, they turned to her for her view on how to interpret the grandfathering clauses. And then she went on for eight months and sent these letters. And she said she didn't have the authority intended for Dottie's to rely on those. So that puts us into the Perry v. Sinderman line of cases where mutually explicit understandings, this is the Supreme Court's decision, and agreements implied from a promisor's words and conduct in light of surrounding circumstances can create that expectation of a property right. And then the... » Let me ask one more question. » Sure. » About, in your brief, you claim that you had, your client had been deprived of a property interest as the county denied your applications for a packaged liquor license. How is that so? » Well, there, that's really, the argument there is that this was discriminatory. And again, part of this, this real pattern over a long period of time is that the county denied for 30 package licenses. The county said, no, we're not giving out anymore. The record reflects, and we supplemented with our judicial notice request that the court granted, that other package licenses were being granted. And so it's part of our case that the regulatory activity is not focused on the public welfare. It's part of an economic protectionist effort by the county. » But you're not arguing that Dottie's had a property interest in obtaining a liquor license, are you? » That argument, Your Honor, it's, we do believe that there's a, in terms of under the wedges-ledges decision, an expectation that if you meet the criteria, that it will be granted and you won't be treated arbitrarily and discriminated against. It's really more of an equal protection argument on the packages issue. But the last point before I sit down I wanted to make is that there's a whole other property and liberty interest at stake here. And the county does not dispute it. We laid out under wedges-ledges and the Benini case from this court, the liberty and property interest in conducting your occupation or business. And in wedges-ledges, the court in footnote four noted that that, it was a gaming case, it was about amusement games and whether it was a game of chance or a game of skill, and it was licensing. And the court held that the right to pursue your business in a way that was appropriate to your interests and occupations under the Benini and the Supreme Court's decision in the famous Schwer case creates a liberty and or a property interest that is, that a corporation can invoke. And here, in the Benini case, it was a tavern owner, and the police, this court found the jury's verdict was to be upheld for damages where the police had excessively and unreasonably targeted to drive the tavern owner out of business. The government, the county does not address that. I think they've conceded it by not addressing it. And on that basis alone, the court could reverse and should reverse. Good afternoon. May it please the Court. I'm Tom Dillard of Las Vegas, and I represent Clark County in this. Good afternoon. Or good morning still. I stand corrected for the first question I asked. Your Honor, we're here on the order granting summary judgment on several different federal basis with respect to Clark County's legislative act of amending its own tavern and gaming code. This case has had quite a protracted record in the District Court of Nevada and, indeed, this Court. There has been now three District Court judges that have determined, based on state law under NRS 463, that a gaming license is not a right, is not a vested right. It is a privilege and revocable. And as well as multiple considerable language in the Clark County Code, it is indeed a privilege. And the county has virtually un-cabined discretion to grant or deny such a privilege to impose conditions, to impose limitations. And this is not an action against, as Your Honor pointed out, this particular license. This was a legislative act to amend its own code to regulate with respect to gaming, as it had the Board determined, that many casinos, or what they called slot parlors, were having an adverse impact upon overall gaming in Nevada, based on paying considerably less taxes than those holding a restricted license. If we took a $200,000 amount, the unrestricted license would pay 2.6 times the amount of taxes. So the governmental interest here in this case is not a right. It is a privilege and revocable privilege. And what we found here was the fact that these licenses that are intended for the holder to use gaming incidental to their business, not the essence of their business, but incidental to their business, to elevate gaming to the paramount feature of their business, and then with that privilege, elevate it to that level, pay considerably less taxes than those holding unrestricted licenses, and having, frankly, Your Honors, considerable advantage over traditional tavern holders who employ a bartender, who employ a hostess, who can run a restaurant with a wait staff, dishwasher, etc. And the record is clear from the person most knowledgeable on the part of Dottie's that one person could run this operation, and in large part did, ran this gaming arcade with a snack bar. And performed janitorial services. So that was the, the District Court of Nevada has three times indicated that that was a rational basis to legislate, and indeed the 2016 panel that considered the 2011 legislation found that the county has the power to regulate with respect to these incidental license holders. With that, that unbridled privilege, no property right attaches at all. And that is dispositive on the due process claim, procedural and substantive. There's been a lot, Your Honor, to give. I want to ask about the 2015 letters. Were, was the county seeking at that time to revoke Dottie's gaming license? Your Honor, there are two letters that came out. The first was, and this is by the director of the business licensing, in February 2015, that that department had looked at the recent amendment and made a determination as to which Dottie's taverns they thought were outside the parameters of that ordinance. That went out in February 2015, and in October of 2015, the director sent out a second letter that said, that interpretation need be revised. It doesn't reflect the intent of the board nor the plain language of the statute with respect to what is a grandfather tavern under that amended ordinance. Well, it's not in the record, but I want to ask if you want to answer, what if Dottie had not complied? Was the next step to revoke the license? Well, Your Honor, this, I can only tell you what this case, the record is. It has a considerable record of unenforcement. And let me speak to that, because I think it, your question goes to this kind of comeback argument made in the briefs that there's some promissory estoppel-based notion of due process. As the brief set forth, this was a protracted legislation, I would call it anti-slot parlor in 2011. The first time around, the record reflects that it provided difficult visually enforceable criteria. And so the board sought to close that loophole and amend the code again to give objective visual basis to determine whether a tavern looked like a tavern, walked like a tavern, talked like a tavern, or was a mini-casino. So throughout that time, Dottie's has ran their operation largely unenforced since 2011. There was a representation made in counsel that the evidence reflected that they lost $4 million, and had to retrofit. Well, that's outside this record, because that evidence, if it indeed establishes that, was produced after disclosure, after the discovery period was over. There was a motion in limine pending to exclude that for late disclosure, and therein came the motion to extend discovery, which the magistrate judge found was untimely, and that was for appeal. So that's a lengthy answer that I don't know that there had been any enforceable action other than the belated evidence disclosed, suggesting that they retrofitted, but that was outside of discovery, and I don't know what was done precisely for enforcement. So it's the answer, we don't know whether there would have been a move to revoke the license, we just don't know what would have happened. The brief cited several cases with respect to, if a government affords a benefit in the past, a property right does not attach to that benefit in the future, and no more is that line of cases applicable into the privilege of running a casino, or using a gaming license. So the position of the briefs that the initial interpretation by the director created a property right has no merit for a number of bases, one of which Judge Rollinson pointed out, I think, that that director under state law does not bind the county, does not speak for what the code says. The United States Supreme Court has made it clear that what this court looks at and determine who the policymaker is, is state law, and the state law is NRS. Excuse me. I've lost my page, I'll come back to that citation if I can find it before I conclude, I apologize. But it indicates the board itself is the policymaker and not the director of business license, so even accepting that is true, that that's what happened, that was her interpretation, and it was erroneous that she had no ability to bind the county because she was not the policymaker under state law. The other issue with respect to the enforcement, or excuse me, that the director's change in policy created a property interest, is the district court found that her revised interpretation of the statute did reflect its plain language. In other words, the initial interpretation was not well founded in the revised interpretation that properly looked at the word application as it was used in the code overall. That an application for a gaming license attaches to a person, not to place. In other words, a place does not get a gaming license and keeps it in perpetuity, that each new owner and operator of that gaming, of that tavern, if they have a restricted gaming license, must apply and receive it. So the distinction with the revised interpretation was, she initially looked at a person, not a place. The original owner or operator of the tavern determined grandfathering, not the one that held it at the time of the legislation, that reflected what the board wanted to do to end the proliferation of slot parlors and keep those, make those taverns, put at least eight of their 15 slots in a bar and run it like a tavern and not a mini casino. Counsel, opposing counsel says that the county does not dispute that his client has a property interest in pursuing a business. Do you agree that the county does not dispute that? I don't, Your Honor. In fact, the record reflects that that argument was not made at the district court level at all, that they had a liberty interest in running a mini casino. I've litigated that issue before. I'm happy to speak to it. But your position is that argument was not made? The argument was not made. It was waived. And Ninth Circuit law makes it clear that in terms of having a liberty interest in the occupation, it must basically eviscerate the occupation. Not, in this case, you have 15 slots, you can either choose to use them in the bar. That does not deprive them of an occupation across the board with respect to running a tavern, especially. And they hold a tavern license to sell liquor, not packaged liquor, but liquor, and they hold a restricted gaming license that they must comply with the restrictions imposed by the county. That are consistent with being a tavern as opposed to a gaming establishment. So I wouldn't concede to that. If that case Menini was cited in their brief, I will certainly rely on counsel that his representation is well-founded. But I've never argued at the district level or here that there was a denial of occupational liberty interest, and that goes much, much further than this type of limited regulation of a privilege to hold a restricted gaming license. The last two issues, Your Honor, was that whether the county's regulation had a rational-based interest. I would suggest at this case, at this point, it has been found by the three district court judges and the panel that the county did have a rational basis to regulate in this area. There's been a lot of argument about subjective intent. I want to make clear... The rational basis was slot parlors paid appreciably less taxes than big casinos. That is, many casinos used a restricted license to run a gaming-centric business, which wasn't the intent of their license, and as a consequence, paid appreciably less taxes and less economic opportunities for the citizenry of Clark County. And that was made clear by the District Court of Nevada, Judge Dawson, as well as Judge Navarro in her latest decision. I mean, fewer employees. That's what you mean by less... That's right, Your Honor. Now, the issue is not whether there's a summary judgment issue about how many employees they have or how much taxes they have. The issue is whether, from this Court's vantage point, under the very deferential, rational basis scrutiny, whether the county had a basis to regulate in this area. And I think that's undisputable, and indeed might be the law of the case at this point, at least with respect to the 2016 decision of the previous panel addressing the 2011 legislation. Last issue is I would submit that it was not an abuse of discretion to deny the motion to extend discovery after the summary judgment motion had been filed, after the motion eliminating seeking to exclude evidence was filed, to then add an expert to the case. The District Court made a prudent decision that if the plaintiff wanted an expert, they were put on notice that that should have been done during the discovery period, and elected only to do that, frankly, in the face of orders that were adverse. Thank you, Your Honor. If I may just start back with the liberty and property interest. We did not articulate it as clearly as we did on appeal, but below, Dottie's argued that this was an effort to put it out of business and regulate it out of business. But at page 43 through 46 in our blue brief in this Court, we argued in detail under the Supreme Court's Green case, under the Wedges-Ledges decision, and under the Bonini case from this Court, that this was a property and liberty interest in doing business. But the point is, how discreetly was that argument made in the District Court? So that was the question I was going to ask you, to point me to the record in the District Court where this precise argument was made. It was not made precisely, Your Honor, but the county did not address our argument on appeal. They waived their waiver argument. This Court has held, Council of Southern Ninth Circuit, the Norwood v. Vance case, 531 F. 3rd at 1062. That's this Court. The Garza case from the Supreme Court, just this year, 139 Supreme Court, 738, where we made an argument. It's fully briefed. It's a legal issue. The county didn't address it. They waived their waiver argument. And that's what I was going to ask, Your Honor, just if I could have 30 seconds more, to say, we just want a shot to prove this to a jury, go back, if the Court rules, there's a property or a liberty interest here, or at least there's factual issues here. The county was bound by its own regulations to do what it said. The county admitted below, it's at page 8 in our additional excerpts of record at 31, that Ms. Holloway was charged with enforcing the rules and licensing laws. She had authority, and she did. And we think that this is the kind of case that is the arbitrary, irrational action that this Court in the Merrifield action, singling out one group that violates due process, and we think equal protection. Just want a shot back in the trial court to prove that. Thank you very much.
judges: D.W. Nelson, Rawlinson, Bea